**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

ALEJANDRA OLIVARES,

       Plaintiff,

v.   No. CV 21-197 MV/CG

KILOLO KIJAKAZI,[1]
Commissioner of the
Social Security Administration,

       Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on Plaintiff Alejandra Olivares's *Motion to Remand or Reverse Agency Decision*, (Doc. 20), and her *Memorandum in Support of Motion to Remand or Reverse*, (Doc. 21), (collectively, the "Motion"), filed January 17, 2022; Defendant Commissioner Kilolo Kijakazi's *Response to Plaintiff's Motion to Reverse or Remand* (the "Response"), (Doc. 23), filed March 18, 2022; and Ms. Olivares's *Reply Brief* (the "Reply"), (Doc. 26), filed April 18, 2022.

Ms. Olivares applied for disability insurance benefits on May 24, 2018, alleging disability beginning on April 2, 2018. (Administrative Record "AR" 58-59). In her application, Ms. Olivares claimed she was unable to work due to PTSD, severe anxiety, panic attacks, depression and carpal tunnel. (AR 59). Ms. Olivares's application was denied initially on October 3, 2018, and upon reconsideration on March 29, 2019. (AR 70, 97). Ms. Olivares requested a hearing before an Administrative Law Judge ("ALJ"), which was held on February 25, 2020, before ALJ Luke Liter. (AR 10, 22).

---

[1] Kilolo Kijakazi was appointed Acting Commissioner of the Social Security Administration on July 9, 2021.

At the hearing, Ms. Olivares appeared with her attorney Helen Laura Lopez and impartial Vocational Expert ("VE") Marsha N. Heald. (AR 10). ALJ Liter issued his decision on Marcy 24, 2020, finding Ms. Olivares not disabled at any time from her alleged onset date, April 2, 2018, through the date of his decision. (AR 22). Ms. Olivares requested review by the Appeals Council, which was denied on February 10, 2021, making ALJ Liter's unfavorable decision the Commissioner's final decision for purposes of judicial review. (AR 1). Ms. Olivares now challenges ALJ Liter's March 24, 2020 decision denying her claim for disability insurance benefits. *See* (Doc. 20); (Doc. 21).

In her Motion, Ms. Olivares argues the following errors require remand: (1) ALJ Liter failed to evaluate the medical opinion of Michael Gzaskow, MD, an examining physician; (2) ALJ Liter failed to inquire into consistency between VE Heald's testimony regarding Ms. Olivares's limitation to "superficial contact with coworkers and supervisors," and the Dictionary of Occupational Titles and Selected Characteristics of Occupation ("DOT"), to the extent required by *Haddock v. Apfel*, 196 F.3d 1084 (10th Cir. 1999); and (3) the hypothetical posed by ALJ Liter and his finding regarding Ms. Olivares's residual functional capacity ("RFC") are insufficiently precise to sustain the Agency's burden of proof at step five of the sequential evaluation process. (Doc. 21 at 6-9).

On September 30, 2021, United States District Judge Martha Vazquez referred this matter to the undersigned to review ALJ Liter's decision, conduct legal analysis, and recommend an ultimate disposition, pursuant to 28 U.S.C. § 636(b). (Doc. 12). The Court has reviewed the Motion, the Response, the Reply, and the relevant law. Additionally, the Court has meticulously reviewed the administrative record. Because

ALJ Liter failed to properly evaluate the opinion of Dr. Gzaskow, the Court **RECOMMENDS** Ms. Olivares's Motion be **GRANTED** and the case be **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

  I.  **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or to show . . . that she has done so, are also grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *See Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision. *See* 42 U.S.C. § 405(g) (2018). Therefore, when the Appeals Council denies review, the ALJ's decision becomes the Commissioner's final decision for purposes of judicial review. *Threet v. Barnhart*, 353 F.3d 1185, 1187 (10th Cir. 2003) (citing *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994)).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal*, 331 F.3d at 760 (quoting *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir.1989)) (internal quotation marks omitted). An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (quoting *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir.1988)) (internal quotation marks omitted). While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citing *Sisco v. United States Dep't of Health and Human Servs.*, 10 F.3d 739, 741 (10th Cir.1993); *Washington*, 37 F.3d at 1439). However, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)) (internal quotation marks omitted).

## II.     Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits, a claimant establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 404.1505(a). In order to determine whether a claimant is disabled, the Commissioner

4

follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520.

At the first four steps of the SEP, the claimant bears the burden of showing (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) her impairment(s) meet or equal one of the "listings" of presumptively disabling impairments found in 20 C.F.R. pt. 404, subpt. P, app. 1.; or (4) she is unable to perform her "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i-iv); *see also Grogan*, 399 F.3d at 1261. If the ALJ determines the claimant cannot engage in past relevant work, the ALJ will proceed to step five of the evaluation. 20 C.F.R. § 404.1520(g)(1); *Grogan*, 399 F.3d at 1261. At step five, the Commissioner bears the burden of showing that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### III.     Background

In her application for disability insurance benefits, Ms. Olivares claimed she was limited in her ability to work due to PTSD, severe anxiety, panic attacks, depression and carpal tunnel. (AR 59). At step one, ALJ Liter determined Ms. Olivares had not engaged in substantial gainful activity since April 2, 2018, her alleged onset date. (AR 12). At step two, ALJ Liter found Ms. Olivares had the following severe impairments: PTSD, generalized anxiety disorder, and dysthymia. (AR 12).

At step three, ALJ Liter determined Ms. Olivares's impairments, solely or in combination, did not meet or equal one of the listed impairments in 20 C.F.R.

5

§§ 404.1520(d), 404.1525, and 404.1526. (AR 13). ALJ Liter then found Ms. Olivares had the RFC to perform "a full range of work at all exertional levels" but added non-exertional limitations as follows:

> [Ms. Olivares] can understand, remember, and carry out simple tasks and detailed tasks, but not complex tasks. [Ms. Olivares] could tolerate superficial (brief and cursory) contact with coworkers and supervisors, but public contact should not be part of the job duties. [Ms. Olivares] can respond appropriately to changes in a routine work setting, and she can tolerate standard levels of supervision.

(AR 14).

In formulating Ms. Olivares's RFC, ALJ Liter stated he considered Ms. Olivares's symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical and other evidence, as required by 20 C.F.R. § 404.1529 and Social Security Ruling ("SSR") 16-3p. (AR 14-15). ALJ Liter stated he considered opinion evidence consistent with the requirements of 20 C.F.R. § 404.1520c, which applies to claims filed after March 27, 2017. (AR 15). He concluded that while Ms. Olivares's impairments could be expected to cause some of her alleged symptoms, the intensity, persistence, and limiting effects Ms. Olivares described were not entirely consistent with the evidence in the record. (AR 16).

In weighing the opinion evidence, ALJ Liter found persuasive the opinion of Mark McGaughey, PhD, that Ms. Olivares could perform simple and detailed tasks. (AR 20). He found Dr. McGaughey's opinion more persuasive than that of Mary Rolison, PhD, who opined that Ms. Olivares "could perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, but . . . could not relate to the general public" because the treatment records supported Dr. McGaughey's opinion. (AR 20). However, he found Dr. Rolison's opinion on Ms. Olivares's social limitations

6

more persuasive "given [Ms. Olivares's] social anxiety," as he found the treatment records "are consistent with the social limitations [assessed by] Dr. Rolison." (AR 20). ALJ Liter found the third-party function report of Susana Gonzales, Ms. Olivares's partner, to be unpersuasive as "it is a lay opinion based upon casual observation," which was "potentially influenced by loyalties of family." (AR 20).

At step four, ALJ Liter found Ms. Olivares incapable of performing her past relevant work as a babysitter, court reporter or administrative assistant. (AR 21). ALJ Liter proceeded to step five, finding Ms. Olivares to be a "younger individual" who has at least a high school education, and can communicate in English. (AR 21). ALJ Liter found, given VE Heald's testimony and Ms. Olivares's age, education, work experience, and assessed RFC, she could perform other work as a floor waxer, warehouse worker, or bottling line attendant. (AR 22). After finding Ms. Olivares was able to perform other work existing in significant numbers in the national economy, ALJ Liter concluded she was "not disabled" as defined by 20 C.F.R. § 404.1520(g). (AR 22). Ms. Olivares's petition to this Court followed. (Doc. 1).

**IV.   Analysis**

Ms. Olivares presents three arguments in her Motion. (Doc. 21 at 6-9). First, she alleges ALJ Liter failed to properly evaluate Dr. Gzaskow's medical opinion. *Id.* at 6. Specifically, she argues that ALJ Liter improperly failed to assign a weight to Dr. Gzaskow's opinion, and she contends this error is harmful because Dr. Gzaskow found greater limitations than did the doctors whose opinions ALJ Liter did consider and assign a weight to. *Id.* In response, the Commissioner argues that ALJ Liter's consideration of Dr. Gzaskow's opinion is sufficient because he discussed it in detail

earlier in the decision, and because he stated that he found persuasive the opinion of Dr. Rolison, which itself discusses and weighs Dr. Gzaskow's opinion. (Doc. 23 at 10).

Second, Ms. Olivares alleges that ALJ Liter failed to inquire into DOT consistency to the extent required by *Haddock v. Apfel*, 196 F.3d 1084 (10th Cir. 1999). Specifically, Ms. Olivares argues that the VE's testimony was inconsistent with the DOT because while the hypothetical included the condition of only "superficial contact with coworkers and supervisors," the DOT "does not discuss impairments to employability caused by mental or emotional limitations such as those which would require additional supervision outside 'standard levels of supervision.'" (Doc. 21 at 7). Because of this omission in the DOT, Ms. Olivares argues that VE Heald's statement that his opinion was consistent with the DOT was not correct. *Id.* Ms. Olivares therefore contends that ALJ Liter impermissibly failed to elicit a reasonable explanation of an inconsistency with the DOT. *Id.* at 9. In response, the Commissioner alleges that "[t]he fact that the DOT does not speak to social interactions does not create a conflict." (Doc. 23 at 11). The Commissioner argues that ALJ Liter complied with *Haddock v. Apfel* by inquiring as to whether there was an inconsistency, and reasonably accepted VE Heald's answer that there was not. *Id.*

Third, Ms. Olivares argues that the hypothetical and RFC which include both "tolerate superficial (brief and cursory) contact with coworkers and supervisors" and "tolerate standard levels of supervision" are insufficiently precise to sustain the Agency's burden of proof at step five. (Doc. 21 at 9). In particular, she argues that because the hypothetical included both "superficial (brief and cursory)" contact with supervisors and "standard levels of supervision," it is impossible for the Court to determine which criteria

VE Heald's testimony was based on. *Id.* at 10. She therefore argues that VE Heald's testimony does not constitutes substantial evidence in support of ALJ Liter's decision. *Id.* at 9. In response, the Commissioner argues that because the phrases "superficial (brief and cursory)" and "standard levels of supervision" themselves are unambiguous, the hypothetical was not impermissibly vague. (Doc. 23 at 11). The Commissioner thus contends that ALJ Liter's decision was based on substantial evidence. *Id.*

### A.  ALJ Liter Consideration of the Opinion Evidence

Ms. Olivares alleges ALJ Liter failed to properly evaluate Dr. Gzaskow's medical opinion. *Id.* at 6. She argues that, in contravention of the law, "[t]here is no weight given to Dr. Gzaskow's opinion nor any explanation why [ALJ Liter] must have rejected his more severe medical conclusions." *Id.* Ms. Olivares argues that this error is harmful given that Dr. Gzaskow "found significantly greater limitations than the two non-examining opinions" which ALJ Liter did discuss. *Id.*

In response, the Commissioner does not dispute that ALJ Liter failed to discuss how persuasive he found Dr. Gzaskow's medical opinion, but instead notes that ALJ Liter "discussed Dr. Gzaskow's opinion earlier in the decision in detail." (Doc. 23 at 10). The Commissioner also argues that because Dr. Rolison "fully considered Dr. Gzaskow's opinion," and ALJ Liter largely found Dr. Rolison's opinion to be persuasive, ALJ Liter adequately considered Dr. Gzaskow's opinion as it was effectively incorporated into the opinion of Dr. Rolison. *Id.* The Commissioner contends that because Dr. Rolison explained that "the severe limitations suggested by Dr. Gzaskow were 'not supported by other medical evidence, and [] based on a one [-]time exam,'" the Court may "easily discern[]" both that ALJ Liter found the opinion of Dr. Gzaskow to

9

be unpersuasive, and why he found as much. *Id.*

### i.  ALJ Liter's Discussion of Dr. Gzaskow's Opinion

Dr. Gzaskow evaluated Ms. Olivares on September 10, 2018. (AR 302). He noted that she has been experiencing anxiety and depression since 2015. (AR 303). He stated that she typically sleeps only four hours a night due to her PTSD and anxiety. (AR 304). He reported that she experiences PTSD symptoms such as nightmares, flashbacks, startle response, anxiety and depressive isolation. (AR 304). He diagnosed her with "severe/chronic" PTSD, general anxiety disorder, and dysthymia. (AR 305). Additionally, he opined that Ms. Olivares is moderately limited in her ability to understand, remember and carry out instructions; moderately to severely limited in her ability to interact appropriately with a supervisor, co-workers or the public; and severely limited in her ability to concentrate, persist, maintain pace and adapt or manage herself. (AR 305).

In determining Ms. Olivares's mental RFC, ALJ Liter discussed Dr. Gzaskow's opinion in detail. (AR 18). He noted Dr. Gzaskow's assessment of moderate and severe limitations, as well as his general observations and his diagnoses of PTSD, generalized anxiety disorder, and dysthymia. (AR 18). However, he did not discuss how persuasive he found Dr. Gzaskow's opinion in general or in the context of the other medical opinion evidence, including the prior administrative medical findings, in which psychological consultants Dr. Rolison and Dr. McGaughey made less restrictive findings regarding Ms. Olivares's mental limitations. *See* (AR 10-22).

### ii.  Whether ALJ Liter's Failure to Discuss the Persuasiveness of Dr. Gzaskow's Opinion was Error

A medical opinion is a "statement from a medical source about what [a claimant]

10

can do despite [their] impairment(s) and whether [they] have one or more impairment-related limitations or restrictions" in listed work-related abilities. 20 C.F.R. § 404.1513(a)(2)(i)-(iv). Conversely, medical source statements on issues that are reserved for the Commissioner, such as the ultimate question of disability, are "inherently neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c). An ALJ is required to articulate how persuasive she finds all of the medical opinions and prior administrative medical findings in a given case. 20 C.F.R. § 404.1520c(b).

The agency issued new regulations regarding the evaluation of medical source opinions for claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, (Jan. 18, 2017) (to be codified at 20 C.F.R. pts. 404 and 416); *compare* 20 C.F.R. § 404.1527 ("Evaluating opinion evidence for claims filed before March 27, 2017"), *with* 20 C.F.R. § 404.1520c ("How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017"). Because Ms. Olivares filed her claim on May 24, 2018, the later regulations apply to this matter.

The new regulations set forth five factors an ALJ must consider in evaluating medical opinions: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) "other factors that tend to support or contradict a medical opinion" including "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c). While an ALJ must consider these five factors when evaluating medical opinion evidence, an ALJ is only required to articulate her consideration of two of those factors: (1) supportability and (2) consistency

11

with the record. 20 C.F.R. § 404.1520c(b)(2). If differing medical opinions are equally well-supported by and consistent with the record, the ALJ must also "articulate how [he or she] considered the other most persuasive factors . . . for those medical opinions." 20 C.F.R. § 404.1520c(b)(3). Failure to comply with these requirements constitutes legal error. *See, e.g.*, *Lovato v. Saul,* 1:20-CV-00187 KRS, 2021 WL 2894733, at *5 (D.N.M. July 9, 2021).

It is not necessary for an ALJ to delineate the direct correspondence between an RFC finding and a specific medical opinion. *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). However, an ALJ cannot "pick and choose" through a medical opinion, taking only the parts that are favorable to a finding of nondisability. *See id.* at 1292 (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). Instead, an ALJ "must . . . explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7. Furthermore, the ALJ must at least explain his decision in a manner that is "sufficiently specific to [be] clear to any subsequent reviewers." *Langley*, 373 F.3d at 1119 (citation omitted); *see also Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Guadagnoli v. Colvin*, 1:15-cv-0214 MCA/LF, 2016 WL 9777190, at *6 (D.N.M. June 16, 2016), *report and recommendation adopted*, 2016 WL 10179287 (D.N.M. July 8, 2016) (finding error where the ALJ's analysis left the Court "to guess at what overall medical evidence the ALJ relied on to come to [a] middle ground") (internal quotation marks omitted). The Commissioner may not rationalize the ALJ's decision post hoc, and "[j]udicial review is limited to the reasons stated in the ALJ's decision." *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (citation omitted).

The parties do not dispute that Dr. Gzaskow's report constitutes a medical opinion. *See generally* (Doc. 20); (Doc. 23); *see also* 20 C.F.R. § 404.1513(a)(2)(i)-(iv) (defining a medical opinion). Likewise, the parties do not dispute that ALJ Liter failed to *explicitly* discuss how persuasive he found Dr. Gzaskow's report. *See* (Doc. 21 at 6); (Doc. 23 at 10). Instead, the parties dispute whether this failure constitutes harmful error. *See* (Doc. 23 at 10); (Doc. 26 at 5).

In the Court's own examination, Dr. Gzaskow's report is indeed a medical opinion. As such, ALJ Liter was required to state how persuasive he found Dr. Gzaskow's report, and to discuss, at a minimum, the factors of supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). ALJ Liter's failure to do so constitutes error. *See Lovato*, 2021 WL 2894733, at *5. The issue the Court must consider next is whether such error was harmful, mandating reversal and remand.

> iii.   *Whether ALJ Liter's Failure to Discuss the Persuasiveness of Dr. Gzaskow's Opinion was Harmful Error*

Ms. Olivares contends that ALJ Liter's failure to properly discuss Dr. Gzaskow's opinion constitutes harmful legal error because had ALJ Liter found Dr. Gzaskow's opinion persuasive, he may have adopted Dr. Gzaskow's assessed limitations which were "significantly greater" than those found by Dr. McGaughey and Dr. Rolison. (Doc. 21 at 6). The Commissioner, in response, argues that ALJ Liter's failure to discuss how persuasive he found Dr. Gzaskow's opinion was harmless error, because it is "easily discerned" from other parts of the decision that ALJ Liter found the opinion unpersuasive, and because ALJ Liter's opinion is otherwise supported by substantial evidence. (Doc. 23 at 10, 23).

An ALJ's error may be considered harmless in exceptional circumstances,

13

"where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). In the context of analyzing objective evidence, the Tenth Circuit "allow[s] the ALJ to engage in less extensive analysis where 'none of the record medical evidence conflicts with [his or her RFC] conclusion.'" *Wall v. Astrue*, 561 F.3d 1048, 1068-69 (10th Cir. 2009) (citing *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004)). It is clear that "when the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened." *Howard*, 379 F.3d at 947.

    a. *The Effect of the ALJ's Error on the Weighing of Other Evidence*

  Here, Dr. Gzaskow diagnosed Ms. Olivares with "severe/chronic" PTSD, general anxiety disorder, and dysthymia. (AR 305). In addition to finding moderate limitations in several areas of mental functioning, he found "moderate/severe" limitations on her ability to interact with the public and he found her "severely limited in her ability to concentrate, persist, maintain pace and adapt or manage herself." (AR 305). These findings are consistent with medical notes in the record reporting that Ms. Olivares "[c]ontinues to be unable to drive due to heightened anxiety/hypervigilance," (AR 379), as well as her testimony that she is unable to grocery shop or cook for herself alone, due to her severe anxiety, (AR 45). Ms. Olivares also testified that she regularly gets anxiety attacks, wherein she feels like she's "going to die," and she gets "really bad anxiety" and "starts hyperventilating" merely from being in public. (AR 45-46). She testified that she takes her prescribed psychological medications, but that they do not

14

help. (AR 50).

ALJ Liter, however, found that the intensity, persistence, and limiting effects Ms. Olivares described were not entirely consistent with the evidence in the record. (AR 16). In his decision, ALJ Liter found that Ms. Liter had only a moderate limitation on interacting with others. (AR 13). ALJ Liter also found she had only moderate limitations with regard to concentrating, persisting, and maintaining pace, and with regard to adapting or managing herself. (AR 13-14). ALJ Liter may thus have afforded more weight to Ms. Olivares's testimony if he had properly evaluated Dr. Gzaskow's opinion, resulting in a more restrictive assessment of Ms. Olivares's mental RFC.

In addition to being consistent with Ms. Olivares's testimony regarding greater limitations, Dr. Gzaskow's opinion is also consistent with parts of Dr. Rolison's findings. For example, Dr. Rolison opined that Ms. Olivares had a "marked" limitation in her ability to "interact with the general public," and in her ability to "carry out detailed instructions." (AR 83-83). This is consistent with Dr. Gzaskow's opinion that Ms. Olivares has a "moderate/severe" limitation on her ability to interact with the public, and a "severe" limitation on her ability to concentrate. *See* (AR 305). Thus, if ALJ Liter had properly evaluated Dr. Gzaskow's opinion, he may have found persuasive Dr. Rolison's findings regarding Ms. Olivares having two different "marked" limitations, resulting in a more restrictive assessment of Ms. Olivares's mental RFC.

The Commissioner argues that because ALJ Liter discussed the persuasiveness of Dr. Rolison's opinion, who in turn weighed and criticized Dr. Gzaskow's opinion, ALJ Liter's discussion of the opinion evidence was sufficient. (Doc. 23 at 10). The Commissioner cites no authority for this novel claim, and the Court cannot accept Dr.

Rolison's evaluation in place of that which ALJ Liter was required to make. *See* 20 C.F.R. § 404.1520c(b-c) (requiring an ALJ to articulate how persuasive she finds all of the medical opinions in a given case, and noting that medical source statements on issues that are reserved for the Commissioner are "inherently neither valuable nor persuasive"). ALJ Liter was not entitled to pick and choose through the opinion evidence, "taking only the parts that are favorable to a finding of nondisability" and disregarding the opinion of Dr. Gzaskow. *Haga*, 482 F.3d at 1208. Instead, he was obligated to "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7.

Accordingly, Dr. Gzaskow's opinion is not only a medical opinion requiring ALJ Liter's consideration, but also significant, probative evidence, and ALJ Liter was required to discuss its persuasiveness in order for substantial evidence to support his findings. 20 C.F.R. § 404.1520c(b-c); *see also Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (substantial evidence requires an ALJ discuss "uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects," and the evidence supporting his decision) (citation omitted). It was not sufficient that ALJ Liter discussed Dr. Gzaskow's evaluation earlier in the decision; he was also required to detail its persuasiveness and explain why he found it persuasive or not, explicitly including the elements of supportability and consistency. *Id.*; *see also Romero v. Colvin*, 1:14-cv-774 CG, 2015 WL 13651149, at *4 (D.N.M. Sept. 3, 2015) (granting remand where ALJ recited provider's specific notes, including functional limitations, but where the ALJ did not explain the weight he gave to the provider's opinion).

ALJ Liter's failure to discuss the persuasiveness of Dr. Gzaskow's opinion is

16

especially troubling as ALJ Liter also failed to assign a level of persuasiveness to the only other examining provider's opinion in this case, that of Brenda McKenna, PMHNP-BC CNP. *See* (AR 292-294). Ms. McKenna, notably, also assessed a limitation on Ms. Olivares's ability to concentrate. (AR 293). While Dr. Gzaskow, like Ms. McKenna, actually examined Ms. Olivares, neither Dr. Rolison nor Dr. McGaughey ever examined her. *See* 20 C.F.R. § 404.1520c(c) (stating that an ALJ must consider a medical source's relationship with the claimant, in evaluating a medical opinion or prior administrative finding); *Finley v. Berryhill*, 1:17-cv-698 SCY, 2019 WL 1118138, at *10 (D.N.M. Mar. 11, 2019) ("[a]n ALJ, who is not a medical provider, must rely on medical providers to determine a claimant's medical condition."). This leaves the Court unable to follow ALJ Liter's reasoning for how persuasive he found every medical opinion and prior administrative finding he relied upon to determine Ms. Olivares's mental RFC, and thus constitutes harmful error. *Guadagnoli*, 2016 WL 9777190, at *6 (finding error where the ALJ's weight analysis left the Court to guess at what medical evidence the ALJ relied on). ALJ Liter's failure to properly evaluate Dr. Gzaskow's opinion leaves the Court with no guidance to perform a meaningful review of ALJ Liter's analysis of (1) Ms. Olivares's mental limitations in the context of her RFC, (2) the proper weight to afford the other medical opinions or the prior administrative findings on Ms. Olivares's mental limitations, or (3) Ms. Olivares's own self-reports of her mental limitations.

Therefore, ALJ Liter's failure to properly evaluate Dr. Gzaskow's opinion, even merely to explain why he found it unpersuasive, constitutes harmful and reversible error. *Ledford v. Barnhart*, 197 F. App'x 808, 811 (10th Cir. Oct. 19, 2006) ("The failure to apply the correct legal standard[s] or to provide this court with a sufficient basis to

determine that appropriate legal principles have been followed is grounds for reversal.") (citations omitted). The Court thus finds that remand is appropriate. Because the Court finds these reasons alone constitute harmful error mandating remand, the Court will not address the parties' remaining arguments.

## V. Conclusion

For the previously stated reasons, the Court finds that ALJ Liter committed harmful legal error when he failed to discuss how persuasive he found Dr. Gzaskow's opinion, including the elements of supportability and consistency with the record.

Consistent with the foregoing, the Court **RECOMMENDS** Ms. Olivares's Motion be **GRANTED** and the case be **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE